USDC SCAN INDEX SHEET

















SWD    4/28/04    8:08

3:04-CR-01070   USA V. FITZGERALD

*5*

*CRINDI.*

FILED

04 APR 20 AM 8: 24

CLERK. U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____  DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

January 2003 Grand Jury

**04 CR 01070 W**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Case No. _____ |
| Plaintiff, | I N D I C T M E N T |
| v. | Title 18, U.S.C., Sec. 371 - |
| | Conspiracy; Title 18, U.S.C., |
| STANLEY FITZGERALD (1), | Sec. 1956(h) - Conspiracy to |
| DONNA FITZGERALD (2), | Launder Money; Title 18, U.S.C., |
| JOSEPHINE FITZGERALD (3), | Sec. 1341 - Mail Fraud; Title 18, |
| | U.S.C., Sec. 1956(a)(1)(A)(i) - |
| Defendants. | Money Laundering; Title 18, |
| | U.S.C., Sec. 2 - Aiding and |
| | Abetting, Title 18, U.S.C., |
| | Sec. 982 - Criminal Forfeiture |

The grand jury charges:

<u>Count 1</u>

1.   Beginning on a date unknown to the grand jury but at least as early as November, 1995, and continuing up to and including October 13, 1999, within the Southern District of California and elsewhere, defendants STANLEY FITZGERALD, DONNA FITZGERALD and JOSEPHINE FITZGERALD did knowingly combine, conspire and agree together and with others to devise a scheme and artifice to defraud and to obtain money by means of false and fraudulent pretenses,

//

MKP:nlv:San Diego
4/20/04



1  representations and promises that the signatures on the memorabilia
2  they offered for sale were genuine, for purposes of executing such
3  artifice, knowingly caused to be delivered by mail or other private
4  commercial interstate carriers according to the direction thereon,
5  certain mail matters; in violation of Title 18, United States Code,
6  Section 1341.

7                           METHOD AND MEANS

8      2.   It was part of the conspiracy that the defendants conducted
9  a business, marketing sports and celebrity memorabilia to wholesale
10 and retail customers, falsely representing the signatures on the
11 memorabilia to be genuine.  Defendant STANLEY FITZGERALD, his wife,
12 defendant DONNA FITZGERALD and his mother, defendant JOSEPHINE
13 FITZGERALD, operated a business using the names "Stan's Sports
14 Memorabilia" and "Stan the Man Sports Memorabilia," among others.  The
15 defendants sold over $2 million of sports and celebrity memorabilia
16 to wholesale and retail customers, falsely representing the signatures
17 of the celebrities and athletes to be genuine.   The defendants
18 operated their business from their adjoining homes at 14 and 16
19 Washburn Place, Caldwell, New Jersey.

20     3.   The defendants purchased forged memorabilia from individuals
21 in the San Diego area, knowing that the signatures were not genuine.
22 The defendants directed that the forged memorabilia be sent to them
23 in New Jersey or directly to individual customers via the United
24 States mail or other private commercial interstate carrier.

25     4.   It was a further part of the conspiracy that the defendants
26 would sometimes send unsigned items of memorabilia to individuals in
27 the San Diego area, requesting that the items be autographed by
28 deceased persons.

                                2

1    5.    It was a further part of the conspiracy that the defendants
2  directed their suppliers in the San Diego area to send the forged
3  memorabilia directly to individual customers or to the defendants in
4  New Jersey using the United States mail or other private commercial
5  interstate carrier.

6    6.    It was a further part of the conspiracy that the defendants
7  would provide their customers with Certificates of Authenticity,
8  falsely representing that an independent third party had evaluated the
9  signatures and found them to be genuine.

10                               OVERT ACTS

11    In furtherance of the conspiracy and to effect the objects
12  thereof, the following overt acts were committed in the Southern
13  District of California and elsewhere:

14          a.   On or about August 18, 1995, five days after the death
15               of Mickey Mantle, defendant STANLEY FITZGERALD ordered
16               300 photographs of Mickey Mantle from a supplier,
17               knowing that the supplier dated the photograph by the
18               year it was printed.

19          b.   On or about November 21, 1995, three months after the
20               death of Mickey Mantle, defendant STANLEY FITZGERALD
21               ordered 1,000 Mickey Mantle photographs from a
22               supplier, knowing that the supplier dated the
23               photograph by the year it was printed.

24          c.   On or about March 3, 1998, defendant JOSEPHINE
25               FITZGERALD sent a facsimile to a supplier of forged
26               memorabilia in San Marcos, California, advising that
27               an album cover would be sent to the supplier to be
28               autographed by Stevie Ray Vaughan, a deceased person,

                                    3

and directing that the autographed item be shipped to Diane Bergemann in Jefferson, Iowa.

d. On or about July 8, 1998, defendant STANLEY FITZGERALD sent a facsimile to a supplier of forged memorabilia in San Marcos, California, directing him to send a shipment of forged memorabilia next door to the attention of defendant JOSEPHINE FITZGERALD, because he did not want his other employees to open the package.

e. On or about August 1, 1998, defendant JOSEPHINE FITZGERALD sent a facsimile to a supplier of forged memorabilia in San Marcos, California, ordering a Lou Gehrig signature placed on a "shellacked ball," a common practice to make the memorabilia appear to be older.

f. On or about August 11, 1998, defendant JOSEPHINE FITZGERALD directed the supplier of forged memorabilia in San Marcos, California, to send a baseball bearing the forged autograph of Babe Ruth to Corina Nesbitt in Davenport, Iowa.

g. On or about November 14, 1998, the defendants shipped a Yankee jersey bearing the forged signatures of athletes to Greg Frigault in Pensacola, Florida.

h. On or about January 13, 1999, defendant JOSEPHINE FITZGERALD opened a letter from a customer, complaining that the baseball she received supposedly signed by Satchel Paige did not have the word "Haiti" stamped on them, as did authentic balls of that type,

4

1    and forwarded it to defendant STANLEY FITZGERALD for

2    a response.

3    i.   On or about January 26, 1999, defendant STANLEY

4         FITZGERALD forwarded a customer's complaint that her

5         autographed baseball did not bear the "Haiti" stamp to

6         a supplier of forged memorabilia in San Marcos,

7         California, directing the supplier to place a "Haiti"

8         stamp on the ball and send it back to the customer.

9    j.   On or about February 5, 1999, defendant JOSEPHINE

10        FITZGERALD directed the supplier of forged memorabilia

11        in San Marcos, California, to ship shellacked

12        baseballs bearing the forged signatures of Roberto

13        Clemente (deceased) and Lefty Grove to Jack Reiter in

14        Seattle, Washington.

15   k.   On or about March 12, 1999, the defendants shipped a

16        baseball bearing the forged signature of Joe DiMaggio

17        to Steve Hastings in Santee, California.

18   l.   On or about June 4, 1999, defendant JOSEPHINE

19        FITZGERALD wrote a memo to the customer service

20        employees, directing them to respond immediately to

21        any email from a customer suggesting that a signature

22        was not authentic by accusing the claimant of slander,

23        telling them they will hear from an attorney, and

24        signing it "John Fitzgerald, Office Manager," a

25        pseudonym for defendant STANLEY FITZGERALD.

26   m.   On or about June 22, 1999, defendant STANLEY

27        FITZGERALD sent one box of forged sports memorabilia

28   //

5

to undercover FBI agents in Oregon, posing as
collectors of sports memorabilia.

n.    On or about July 11, 1999, defendant STANLEY
FITZGERALD sent a facsimile to a supplier of forged
memorabilia in San Marcos, California, requesting that
the supplier provide him with 10,000 of the supplier's
certificates of authenticity in blank.

o.    On or about July 25, 1999, defendant STANLEY
FITZGERALD sent a note to a supplier of forged
memorabilia in San Marcos, California, directing him
to "upgrade" the autographed Joe DiMaggio baseballs
Fitzgerald had sent him to Joe DiMaggio and Mickey
Mantle combinations, knowing that Mantle was deceased
at the time.

p.    On or about July 26, 1999, defendant STANLEY
FITZGERALD advised a supplier of forged memorabilia in
San Marcos, California, not to say the name of the
forger on the telephone.

q.    On or about August 5, 1999, defendant DONNA FITZGERALD
ordered 1,000 certificates of authenticity to be
printed attesting to the signature Mickey Mantle, and
1,000 attesting to the authenticity of the signature
of Joe DiMaggio, both deceased athletes.

r.    On or about August 25, 1999, defendant DONNA
FITZGERALD ordered 7,875 copies printed of the
certificate of authenticity of the supposed
independent third party authenticator attesting that
the signatures on the memorabilia were genuine.

s.  On or about September 2, 1999, defendant STANLEY FITZGERALD told the supplier of forged memorabilia in San Marcos, California, that he has been destroying records of their transactions because he did not want them around the office, where they could be seen by others.

t.  On or about September 8, 1999, the defendants shipped a photograph bearing the forged autograph of John F. Kennedy, Jr. to Joseph Barone in College Point, New York.

u.  On or about September 11, 1999, defendants Stanley Fitzgerald and Donna Fitzgerald issued a memo to all employees, advising them that they were authorized to sign the certificates of authenticity of the supposed independent third party attesting that the signatures were genuine.

v.  On or about September 23, 1999, defendant STANLEY FITZGERALD sent one baseball and one photograph, each bearing the forged autograph of a deceased athlete, to undercover FBI agents in Oregon, posing as collectors of sports memorabilia.

All in violation of Title 18, United States Code, Section 371.

<u>Count 2</u>

7.  Beginning on a date unknown to the grand jury but at least as early as August, 1995, and continuing up to and including October 13, 1999, within the Southern District of California and elsewhere, defendants STANLEY FITZGERALD and JOSEPHINE FITZGERALD did knowingly conspire and agree with each other and persons known and

7

unknown to the grand jury, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, to conduct financial transactions affecting interstate and foreign commerce, which involved the proceeds of specified unlawful activity, to wit, mail fraud; in violation of Title 18, United States Code, Section 1341:

a. with the intent to promote the carrying on of that specified unlawful activity (mail fraud), by using the proceeds to operate the scheme to defraud; in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i); and

b. knowing that the transaction is designed in whole or in part to conceal or disguise the nature, location, ownership and control of property believed to be the proceeds of that specified unlawful activity (mail fraud); in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

<u>METHOD AND MEANS</u>

8. It was part of the conspiracy that the defendants operated businesses using the names "Stan's Sports Memorabilia" and "Stan the Man Sports Memorabilia," among others, in order to market the forged celebrity and sports memorabilia involved in the scheme to defraud.

9. It was a further part of the conspiracy that the defendants for the purpose of promoting the mail fraud scheme, opened bank accounts at the West Essex Bank in Caldwell, New Jersey, and obtained lines of credit through American Express.

10. It was a further part of the conspiracy that the defendants would use these bank accounts and lines of credit to promote the mail fraud scheme, by writing checks and using the lines of credit to purchase forged memorabilia, product, mailing lists, postage, labels,

8

1 building renovations, and other items needed to further the scheme to
2 defraud in amounts totaling over $2 million.

3    11.   It was a further part of the conspiracy that the defendants
4 authorized the individuals in the San Diego, California, area to post
5 charges to their lines of credit for payment for the items of forged
6 memorabilia.

7                              OVERT ACTS

8    In furtherance of the conspiracy and to effect the objects
9 thereof, the following overt acts were committed in the Southern
10 District of California and elsewhere:

11         a.   On or about March 4, 1998, defendant STANLEY
12              FITZGERALD paid the source of forged memorabilia in
13              San Diego the sum of $4,500.

14         b.   On or about June 18, 1998, defendant JOSEPHINE
15              FITZGERALD wrote check number 2164 from the West Essex
16              Bank account in the amount of $9,000 to pay a
17              contractor to renovate portions of the property at 14
18              Washburn Place, West Caldwell, New Jersey, to become
19              offices for the business.

20         c.   On or about October 1, 1998, defendant STANLEY
21              FITZGERALD wrote seven checks from the West Essex Bank
22              account, check numbers 2365 - 2371, for a total amount
23              of $55,459 to pay a contractor to renovate portions of
24              the property at 14 Washburn Place, West Caldwell, New
25              Jersey, to become offices for the business.

26         d.   On or about October 23, 1998, defendant STANLEY
27              FITZGERALD paid a source of forged memorabilia in
28              San Diego the sum of $12,000.

                                 9

e.  On or about November 13, 1998, defendant STANLEY FITZGERALD paid $2,040 to a supposedly independent third party authenticator of signatures located in San Diego, California.

f.  On or about December 4, 1998, defendant JOSEPHINE FITZGERALD wrote a check to American Express for $168,147.64 to purchase forged memorabilia.

g.  On or about December 4, 1998, defendant STANLEY FITZGERALD wrote check number 2490 from the West Essex Bank account in the amount of $9,000 to pay a contractor to renovate portions of the property at 14 Washburn Place, West Caldwell, New Jersey, to become offices for the business.

h.  On or about January 27, 1999, defendant STANLEY FITZGERALD wrote three checks from the West Essex Bank account, check numbers 2598, 2599 and 2601, for a total amount of $23,336 to pay a contractor to renovate portions of the property at 14 Washburn Place, West Caldwell, New Jersey, to become offices for the business.

i.  On or about April 27, 1999, defendant STANLEY FITZGERALD paid a source of forged memorabilia in San Diego the sum of $62,700.

j.  On or about July 30, 1999, defendant STANLEY FITZGERALD paid a source of forged memorabilia in San Clemente the sum of $12,500.

//

//

10

k.  On or about August 10, 1999, defendant STANLEY FITZGERALD paid a source of forged memorabilia in San Clemente in the sum of $5,162.

l.  On or about August 15, 1999, defendant JOSEPHINE FITZGERALD wrote a check to pay a supplier of forged memorabilia in San Clemente in the sum of $51,580.

m.  On or about August 18, 1999, defendant STANLEY FITZGERALD wrote a check in the amount of $21,706 from the West Essex Bank account to purchase forged sports memorabilia from a supplier in San Clemente, California.

n.  On or about August 23, 1999, defendant JOSEPHINE FITZGERALD wrote four checks, each in the amount of $9,000, to pay a supplier of forged memorabilia in San Clemente, California.

o.  On or about August 25, 1999, defendant JOSEPHINE FITZGERALD wrote a check in the amount of $6,312, to pay a supplier of forged memorabilia in San Clemente, California.

p.  On or about August 27, 1999, defendant JOSEPHINE FITZGERALD wrote two checks in the amounts of $6,000 and 7,004 from the West Essex Bank account to purchase forged sports memorabilia from a supplier in San Clemente, California.

q.  On or about August 31, 1999, defendant JOSEPHINE FITZGERALD wrote a check in the amounts of $12,448 from the West Essex Bank account to purchase forged

//

11

sports memorabilia from a supplier in San Clemente, California.

r.   On or about September 7, 1999, defendant JOSEPHINE FITZGERALD paid a source of forged memorabilia in San Clemente the sum of $32,251.

s.   On or about September 13, 1999, defendant JOSEPHINE FITZGERALD paid a source of forged memorabilia in San Clemente the sum of $35,040 in two checks for $32,460 and $2,580.

t.   On or about October 13, 1999, while a search warrant was being executed at his residence, defendant STANLEY FITZGERALD purchased a $500,000 cashier's check from the West Essex Bank account, payable to Autograph Memorabilia, Inc., and deposited into an account owned by the defendants.

All in violation of Title 18, United States Code, Section 1956(h).

Counts 3-16

12.   Beginning at a date unknown but at least as early as August 1995, and continuing up to and including October 13, 1999, defendants STANLEY FITZGERALD, DONNA FITZGERALD and JOSEPHINE FITZGERALD did devise a scheme and artifice to defraud and to obtain money by means of false and fraudulent pretenses, representations and promises.

13.   It was a part of the scheme to defraud that the defendants conducted business using the names "Stan's Sports Memorabilia" and "Stan the Man Sports Memorabilia," among others.   The defendants marketed sports and celebrity memorabilia to retail and wholesale customers, falsely representing the signatures of the celebrities and athletes to be genuine.

12

14. In furtherance of the scheme to defraud, the defendants provided their customers with Certificates of Authenticity, falsely representing that an independent third party had evaluated the signatures and found them to be genuine.

15. In furtherance of the scheme to defraud, the defendants would sometimes send unsigned items of memorabilia to individuals in the San Diego area, requesting that the items be returned to them bearing the autographs of deceased persons.

16. On or about the dates set forth below, in Column A, within the Southern District of California, defendants STANLEY FITZGERALD, DONNA FITZGERALD and JOSEPHINE FITZGERALD, having devised a scheme and artifice to defraud and for obtaining money by means of false or fraudulent pretenses, representations and promises, did, for the purpose of executing such scheme and artifice, knowingly cause to be deposited in the mail or delivered by private commercial interstate carriers, certain mail matter, as set forth below in Column B, to the address set forth below in Column C, from the address set forth below in Column D:

| Count | Column A (Date) | Column B (Mail Matter) | Column C (Recipient) | Column D (Sender) |
|---|---|---|---|---|
| 3 | 05-10-99 | unsigned sports memorabilia | 995 Robin Ct. San Marcos, CA | 14 Washburn Pl. Caldwell, NJ |
| 4 | 05-20-99 | Hank Aaron bats and jerseys | 995 Robin Ct. San Marcos, CA | 759 Bloomfield Ave., Ste. 394 W. Caldwell, NJ |
| 5 | 05-21-99 | 4 boxes of autographed sports memorabilia | 14 Washburn Pl. Caldwell, NJ | 133 N. Pacific, #D San Marcos, CA |
| 6 | 05-28-99 | 2 boxes of autographed sports memorabilia and celebrity photos | 14 Washburn Pl. Caldwell, NJ | 133 N. Pacific, #D San Marcos, CA |

13

| Count | Column A (Date) | Column B (Mail Matter) | Column C (Recipient) | Column D (Sender) |
|---|---|---|---|---|
| 7 | 06-04-99 | 1 box of autographed sports memorabilia and celebrity photos | 14 Washburn Pl. Caldwell, NJ | 133 N. Pacific, #D San Marcos, CA |
| 8 | 06-04-99 | autograph of Gary Cooper | 3561 Normount Oceanside, CA | 133 N. Pacific, #D San Marcos, CA |
| 9 | 06-24-99 | 2 boxes of autographed sports and celebrity memorabilia | 14 Washburn Pl. Caldwell, NJ | 133 N. Pacific, #D San Marcos, CA |
| 10 | 07-07-99 | 4 boxes of autographed sports memorabilia | 14 Washburn Pl. Caldwell, NJ | 133 N. Pacific, #D San Marcos, CA |
| 11 | 07-08-99 | autographed baseball jersey | 10299 Scripps Trail, #216 San Diego, CA | 759 Bloomfield Ave., Suite 394 W. Caldwell, NJ |
| 12 | 07-12-99 | 1 box of unsigned sports and celebrity memorabilia | 995 Robin Ct. San Marcos, CA | 759 Bloomfield Ave., Ste. 394 W. Caldwell, NJ |
| 13 | 07-26-99 | 2 boxes of signed and unsigned sports and celebrity memorabilia | 995 Robin Ct. San Marcos, CA | 759 Bloomfield Ave., Ste. 394 W. Caldwell, NJ |
| 14 | 07-29-99 | blank certificates of authenticity | 647 Camino de Las Mares, 108-Box 151 San Clemente, CA | 133 N. Pacific, #D San Marcos, CA |
| 15 | 08-02-99 | unsigned baseball jerseys | 995 Robin Ct. San Marcos, CA | 759 Bloomfield Ave., Ste. 394 W. Caldwell, NJ |
| 16 | 08-04-99 | 4 boxes of autographed sports memorabilia and blank certificates of authenticity | 14 Washburn Pl. Caldwell, NJ | 133 N. Pacific, #D San Marcos, CA |

All in violation of Title 18, United States Code, Sections 1341 and 2.

//

//

//

14

1          Count 17

2          17.  On or about April 27, 1999, within the Southern District of

3  California, defendants STANLEY FITZGERALD and JOSEPHINE FITZGERALD,

4  knowing that the property involved in a financial transaction

5  represents the proceeds of some form of unlawful activity, conducted

6  a financial transaction, to wit: paid the supplier of forged sports

7  and celebrity memorabilia in San Diego with check number 92509 from

8  West Essex Bank in the amount of $62,700.00, affecting interstate or

9  foreign commerce, which in fact involved the proceeds of specified

10  unlawful activity, to wit, mail fraud; in violation of Title 18,

11  United States Code, Section 1341, with the intent to promote the

12  carrying on of specified unlawful activity (mail fraud); in violation

13  of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 2.

14          FORFEITURE ALLEGATION

15          1.  Upon conviction of one or more of the felony offenses

16  alleged in Count 2 and in Count 17 of this indictment, defendants

17  STANLEY FITZGERALD and JOSEPHINE FITZGERALD shall forfeit to the

18  United States pursuant to Title 18, United States Code, Section 982

19  all property involved in each offense in violation of Title 18, United

20  States Code, Section 1956 and all property traceable to such property

21  including 1) all money or other property that was the subject of each

22  transaction or transfer in violation of Title 18, United States Code,

23  Section 1956; and 2) all commissions, fees and other property

24  constituting of proceeds obtained as a result of those violations; and

25  3) all property used in any manner or part to facilitate the

26  commission of those violations including but not limited to the

27  following:

28  //

15

1      (a)    14 Washburn Place,

2            Caldwell, New Jersey, legally described as:

3            Beginning at a point in the southeasterly
                  side of Washburn Place distant along the
4            same   312.97   feet   southwesterly   from
                  Bloomfield Avenue  as  said  distance  is
5            indicated on the tax map; _

6            thence (1)   along said side of Washburn
                  Place, South 38 degrees 45 minutes West 50
7            feet;
                  thence (2)   South 51 degrees 15 minutes East
8            142.85 feet;
                  thence (3)   North 38 degrees 40 minutes East
9            24.95 feet;
                  thence (4)   North 39 degrees 32 minutes East
10           25.05 feet;
                  thence (5) North 51 degrees 15 minutes West
11           143.24 feet to the said southeasterly side
                  of Washburn Place and point or place of
12           BEGINNING.

13           The above description being taken from a
                  survey made by Dorrie & Kreiner.  Surveyors,
14           dated November 21, 1945.

15           Said premises are known as No. 14 Washburn
                  Place, Caldwell, New Jersey.
16

17           BEING the same premises conveyed to Donald
                  L.  Fitzgerald,  married  and  Evelyn  D.
18           Fitzgerald, unmarried, by deed of Daniel
                  Espy and Clara P. Espy, his wife, dated
19           June 5, 1961, recorded in Book 3793 of Deeds
                  for Essex County at page 203.

20           Donald  L.  Fitzgerald  died  testate  on
                  April 17, 1990 leaving his interest the said
21           premises to his surviving spouse, Josephine
                  Fitzgerald.
22

23      (b)    $500,000 which defendant STANLEY FITZGERALD caused to

24            be deposited into a Merrill, Lynch, Pierce, Fenner and

25            Smith account in the name of Autograph Memorabilia,

26            Inc. on or near October 13, 1999; and

27

28

1           (c)   Approximately $2,000,000 in U.S. Currency representing

2                  the amount of the transactions or transfers involved

3                  in the 18 U.S.C. § 1956 (Money Laundering) offenses

4                  alleged in Count 2 and Count 17.

5    2.   If any of the forfeitable property described in paragraph 1

6 (a), (b), or (c) of the Forfeiture Allegations, as a result of any act

7 or omission of the defendant,

8           (a)   cannot be located upon the exercise of due diligence;

9           (b)   has been transferred or sold to, or deposited with, a

10 third party;

11          (c)   has been placed beyond the jurisdiction of the court;

12          (d)   has been substantially diminished in value;

13          (e)   has been commingled with other property which cannot

14 be divided without difficulty;

15 it is the intent of the United States, pursuant to Title 21, United

16 States Code, Section 853(p) as incorporated by Title 18, United States

17 Code, Section 982(b), to seek forfeiture of any other property of said

18 defendant up to the value of the forfeitable property described above,

19 including but not limited to the following:

20    1.   16 Washburn Place

21       Caldwell, New Jersey, (described as lot 4, block 51, PMSA

22       #5640, County of Essex Tax Map Reference N.J.S.A. 46:15-

23       2.1, State of New Jersey); and

24 //

25 //

26 //

27 //

28 //

17

2.  1201 Ocean Avenue, #2E

Bradley Beach, New Jersey, (described as lot 1.10, block

12, Borough of Bradley Beach, County of Monmouth, State of

New Jersey).

DATED: April 20, 2004.

A TRUE BILL:

*Daphne C. Williams*

Foreperson

CAROL C. LAM
United States Attorney

By: *[signature]*

MELANIE K. PIERSON
Assistant U.S. Attorney

18